This is my first time here. Thank you very much. Thank you, Council. Welcome aboard. Thank you. Mr. Collins? Yes, sir. You may proceed, sir. Thank you, Your Honors. I'm here on behalf of the appellant, Speck. So what we have here is a situation where in the prior interference, Speck did not get a chance to pursue its priority case on a count that included a contrast agent embodiment. In the second interference, what we're really dealing with is predominantly three, what we believe are three errors by the board, which are all interrelated, and I can discuss them individually. Can you remind me why it was that you ultimately had to go with claim 100 and could not have the contrast agent in the claim? What was the rationale that the board provided for that? The rationale, so I'll just give you a little bit of background, I can give you the actual rationale, was at the time it was a challenge to the written description. I think that was raised in the earlier issue in some of the discussion back and forth. What ended up happening is the resolution was, as a result of that resolution, was if you took the word contrast agent embodiment or contrast agent out of claim 99 at the time, the parties that reached a conclusion that Speck would not have priority for that. So what they said was, we want to continue to dispute the contrast agent embodiment and propose that to be put into a second account. We want a second account and fight over that and we'll concede priority, not written description, priority for a count where the contrast agent is removed. Apparently the parties exchanged proofs and they were willing to make that concession at that time. But in the same exact paper at the same exact time, they had also requested the additional count that included the lipophilic drug and the contrast agent and asked for that to stay in pursuit. And what the board said in that first interference was, we will let you take adverse judgment on the count with the contrast agent embodiment removed. And we will not have an interference over the second one. And the stated reasons were, I believe actually the exact words were, just speedy and inexpensive resolution of the interference. And we think that's consistent with some of the other decisions that were made in the case, too. Because the parties had asked to add other applications, for example, that had claimed related subject matter. Those had not completed examination. They had not been examined by an examiner. Just like the contrast agent embodiment had not been a claim that had been per se directly examined by an examiner. And the board hadn't allowed those to go in. This is actually fairly common board practice to have an interference over an issue that's right, really, is what went on here. And I think a fair reading of the record is, they weren't disallowed or told, you can't have the second count in that first interference because it's not patently distinct of the merits or because you're procedurally defective. At that point, they were just told, it's convenient for us to resolve the matter this way. Now, the contrast agent embodiment. So that claim, just so I understand. Sure. I think it was 99. It was 99 and then 100. If that interference were to have continued, there still would be a determination on written description? There still would have been, yes. That issue was preserved. And it's very important to understand that the judgment awarded was not written description. It was a judgment on priority of the count that was in dispute. And that's all that was resolved in the first interference. That's absolutely all that was resolved is that one count consisting of, not comprising, consisting of the lipophilic drug. That's what was decided in the first interference. SPEC was never had that opportunity to pursue the count where it had the drug and the contrast agent embodiment. And to go to one of the other points, this is not an untimely thing. There was a notion of whether this was untimely in the record. What was the timing on the determination that claim 99 was no longer going to be in the first interference with respect to SPEC's then request for adverse judgment? OK, so the timing is the contrast agent embodiment had always been the case from the outset. Then we come up to this point where claim 99, the contrast agent embodiment because it was an option in the original claim, is what I'm saying. So the original claim really had the original count, I should say, had both. Then when we come up to the point of claim 99, the parties came back, and this is in the record, with two requests. And this is where I think is what we call a reasonable litigant's position and a reasonable compromise. SPEC said, we're happy to have a count that takes the contrast agent out. And we would concede priority to that, and that would settle that issue. But we also want to continue having a fight over, a dispute over, the embodiment where the contrast agent, those are simultaneous. Those are on the exact same phone call, and the order resulted from that phone call. And the decision was, we'll take the adverse judgment on the first, and we won't continue with the second. Not on the merits, not because you were too late, and there was no other explanation except for the words that, just speedy and inexpensive resolution of the interference. This is not an unusual practice to have an unexamined, something that hadn't been before the examiner as to spec. Interference is a significant investment, but the board resources to have it go back to the examiner, let them see it, and live and fight another day. I have another question for you, which is in the patentable distinctness. That's just a one-way determination, right? It's not a two-way determination of patentable distinctness, right? This is a one-way distinctness test, yes. That's right. I don't think we contended it was two-way. It's a one-way test. I believe at the time of declaring an interference can be two-way, but for the purposes of applying the judgment to the future, it's one-way. So where was I here? So the consisting of issue actually does, it really affects a couple of things here. One, it affects the patentable distinctness too, but it also really affects in sort of the sum total of what race judicata is a little bit all about. Because we're not talking about a catheter with a balloon, like a physical product that was sitting on my desk, and someone skilled in the art is wondering, could I add a contrast agent to it? We're dealing with a claim. The claim says consisting of, which means you can't add anything to it. But we're even dealing with something that's a little bit more than a claim. We're dealing with a count. It's drafted like a claim, but it defines what the dispute was in that first interference. It defines what evidence SPEC could have offered. The reason SPEC conceded priority on a consisting of claim that consists of the lipophilic drug was obviously it had reached the conclusion that it didn't have first inventorship of that. It couldn't use any first inventorship of, let's say, an embodiment with the drug and the contrast agent because that's irrelevant. The count isn't just like a claim defining an invention. It defines what's in and what's out in terms of proof. And that's very important to understand what the judgment decided and what SPEC had an opportunity to present. Issue preclusion really shouldn't fundamentally attach to the contrast agent embodiment. It was not adjudicated on the merits. SPEC was not told that it was procedurally deficient in presenting that. And in fact, the opportunity to present evidence of that embodiment had been in the proceeding, that first interference, from day one until at the very last minute the board somewhat took a split decision on what was their compromise and how to deal with this. I hear what you're saying. I hear the equitable argument you're making. But I'm wondering, isn't some of your concern almost implicit in the test that we are supposed to undertake, which is with this patently distinct analysis? You say that SPEC agrees it didn't have first inventorship of what is in Claim 100. But if it's not patently distinct from the count in the second interference, then I'm not sure what the import is. It means that you didn't have the first claim of inventorship for something that's not even patently distinct. Well, but here's where the unfairness and these things work in together. And this is more, and I believe it's the Frelette case. So the Frelette case, the count that was decided was 6 to 13 angstroms. And Frelette had said, I really think I could put on my priority cruise for 5 to 15, I believe, was the fact pattern. So we're talking 100 millionth of a centimeter is, I think, what an angstrom was. And the board said in the first interference, no, we're going to go 6 to 13. And the CCPA said, well, you know what's really important here is not that 5 is patently indistinct from 6. And in that case, they said it probably is. But the important thing is that Frelette could have gotten a different outcome because the 5 angstroms. It could have won the case with first inventorship of 5 angstroms. Apparently, it couldn't win with 6 to 13, but it could have won with proof of a 5. And it had asked for 5 to be the original count. So it's not just are these the same invention. You also have to factor in with the scope of proof that is permitted as different, the outcome could have been very different. And we could be having the exact same opposite argument. If the board in the original case had said, I'm only going to hear this about the contrast agent embodiment and the drug together, very well, the outcome could have been absolutely different. And it would have the same exact argument, but we would be sitting at different tables. And I think that's really important is this judgment. It's not just about are the inventions really similar. It's who had an opportunity to prove something. And the outcome is really driven by what count the board chose. In all honesty, they should have even chose both. They should have gone with the original one that allowed the best, broadest offer of proof to have all the evidence going. And they just did it. So the patentable distinction in Frelet, it really does say that even if it's patentably distinct, they have to have a chance. If they requested that chance to make that proof, at least we get the right judgment, or at least we get the right facts into the record in that first case. Kroeckel, this court cited Frelet and said, yeah, one way to deal with these kinds of situations is to make sure you ask. Kroeckel was found in deference estoppel. But they even pointed out that Kroeckel lost because he didn't even try. My client tried. They tried everything they could. They didn't get a decision on the merits. And that's what that authorizations of motions are. They just didn't get their day in court that first time around. I'm into my rebuttal time. I'm happy to take any questions at this moment. But I'd also like a few minutes of my own, if I could. Thank you. Thank you. Mr. Brown. Sir? Good morning. May it please the court. This is the rare bird case. This is an interference matter that's straightforward, non-technical, lucid. In a first interference, SPEC requested adverse judgment. In a second interference, the board issued an order to show cause on estoppel. And SPEC failed to meet its burden to show that there was a new interference to be had, to show that there was something significantly different from the prior interference. There's really no reason to have a second interference now since what was decided in the first interference, what would go into a second interference, could have been decided and was decided in the first one. Looking at the order to show cause in the current interference, it's a proper action by the board. The Biogen case talks about the importance of orders to show cause in setting burdens of proof, things like that. How do you respond to the point about Claim 99 and how it's unfair in the sense that, you know, there was this understanding when they took adverse judgment that Claim 99 would still stand and there would be an interference on Claim 99? Your Honor, I think that's not in the record. I think the record shows that at the time that there was a second conference call on behalf of both parties, of SPEC and Bates, to decide on what SPEC's only claim would be, that there was a discussion about, you know, the claim would, Claim 99 would avoid the written description issues that Bates had raised. And when SPEC later asked, we would like another claim, we would like another count, Bates told the board or urged the board to find that untimely because we were well after the motions process. The board made its decision to allow the replacement of SPEC's claim at SPEC's request and at the same time made the decision not to allow a second claim in an order, I don't have the date right to hand, but it wasn't until the next day that SPEC actually decided to request adverse judgment. So there was time for SPEC to look at the judgment, to decide what it wanted to do, and proceeded with adverse judgment. SPEC never made any issue with respect to the order to show cause that was issued in the current interference, so it's presumed to be proper. Instead, it responded substantively with only two arguments. One was that its current claims were patentably distinct from the prior subject matter and the prior interference. And two, that even if it had wanted to put its current claims in the first interference, that would have been futile. The board wouldn't have allowed it. Now, that futility of offering its current claims was put paid to by the Krokl decision, saying that a party can't unilaterally assume what's futile or what the board is going to do. You have to make that effort. But from an analysis perspective, the board made the proper analysis in this case. It followed the controlling Biogen and Dechler decisions in dealing with SPEC's showing. All that SPEC provided was attorney argument regarding the language of the claims, language of the counts. It provided some bits from prosecution history. Biogen said even a restriction requirement from the prosecution history isn't probative evidence of patentable distinctness. What evidence can the court properly look at to make the determination in finding something patently indistinct? Well, just as the board did, Your Honor, they looked first to see if the current claims would be anticipated by the prior account, by the prior subject matter, found that it wouldn't. But you then have to go on to a question of obviousness. And the real question before the board was, did SPEC establish effectively that its current claims were non-obvious over subject matter that was in the prior case? In order to do that, SPEC should have- When you say subject matter in the prior case, you're saying specifically the count, claim 100, right? I'm saying the count, but I'm also saying the claims that were involved in the prior case, Your Honor. Those claims that correspond to the count? Yes. Yes, Your Honor. Thank you. With respect to evidence, thank you, Your Honor. The evidence that should have been presented were exactly the sorts of evidence that one would provide in an obviousness or non-obviousness question. You should provide other references. You should provide evidence of the state of the art, hard evidence of the state of the art. You should provide declarations from fact or expert witnesses. You should provide the declaration that the board's own standing order suggests that you provide. None of that appears in the case. Your answer is there isn't any. There isn't any evidence, Your Honor. You're right. More to Your Honor's point about the claims in the prior case, the Deckler case specifically says that Estoppel bars claims for inventions that were not patently distinct from those in the prior case, in the lost case. When we talk about those, we're talking about the prior counts. We're talking about the prior claims for inventions. SPEC never presented any evidence as to how its current claims were different from Bates Claim 23 that was involved in the prior interference. Looking at a few of SPEC's current arguments in its briefing to the court, they're just really not supportable. First of all, it spent a significant amount of ink on whether it did or did not request a second count. The board's order relies on Estoppel by judgment. SPEC acknowledged in its briefing that, yes, this is an Estoppel by judgment case. And the Biogen case puts paid to that argument, that even if they had requested a second count properly, we believe that they didn't, but even if they had, that doesn't affect Estoppel by judgment. So all of that argument is immaterial. Its consisting of arguments are also unsupported. Even though SPEC had the burden of establishing patentable distinctness in this interference, it provided no case law to say that a count that says consisting of has no relation to an obviousness analysis at all. It didn't provide any case law counteracting the several cases that say even though two subject matters may be mutually exclusive, that doesn't mean that they're patentably distinct. And finally, their argument is based on a misunderstanding of the Rissa case, In re Rissa. They made the argument that consisting of has a particular meaning in the law, and since Rissa says you can't use a count as prior art, then there's no place for you to adopt the count that has consisting of in this obviousness analysis. Rissa says actually precisely the opposite. Rissa says that when a count is lost, it behaves as prior art under section 103. So this is not a case of claim construction. This is a case of prior art. It's a case of disclosure. You see what the count, what the prior claims disclose. You assess it in the normal manner, in light of the other art, in light of the knowledge of ordinary skill, and you see what is patentable, what isn't patentable, what is or is not obvious over it. Regarding their arguments on lack of opportunity to litigate, we have to bear in mind that SPECT provoked the first interference. They provided the claim that interfered. They provided the count that interfered. They provided the first information to the PTO as to why an interference should be declared. They proposed motions. They joined issue once the interference was declared. They proposed motions. They voluntarily amended their claims. They proceeded along in litigating. They've admitted that what they wanted was in the interference to start with. At some point, they made a pivot, decided on a different strategy. Perhaps they didn't realize the extent of that change in strategy and the estoppel that that would create, but that's not Bates' fault. That shouldn't excuse the opportunity to circumvent the outcome of the prior interference at the expense of the Bates party. And in the current interference, the board gave them another chance. The board gave them the order to show cause, saying that if you believe that you have something to fight about in the second interference, show us. And they simply didn't. So if what SPECT means is that they didn't have an opportunity to litigate in the first interference, that's manifestly wrong. They did litigate, and they chose a course of action that they may not regret. If SPECT means that there was no opportunity to litigate the contrast agent or no opportunity to establish that the contrast agent claims were in some way patently distinct, they certainly didn't have to change their claims in the original interference or request adverse judgment. And they certainly could have put forth evidence with respect to the order to show cause to establish that they had a case to prove. I do also want to mention a couple of points in particular rebuttal to SPECT's argument. First on the idea that this is not appropriate case for issue preclusion or res judicata, however you care to phrase it. It should be remembered that even though Declar, Biogen say that interference estoppel may have some relationship or may come out of some principles of res judicata, it's not the same thing. It's a creature of rule and of case law, long involved, that says that once you have a judgment on a count, the subject matter of that interference, the count and claims, act as a bar to anything that is patently indistinct. Board rule 127, 37 CFR 41.127, makes the estoppel provision, puts it right into the rule. And as we pointed out in our briefing, it's crucial to give high weight, high deference to the patent office and their interpretation of their own rules. With regard to their citation of the case In Re Frelet, I would observe that that's an old rules interference in a case where not every issue that could be brought forth in a current interference was able to be brought forward. That's one distinction. And then there's also footnote five, which acknowledges that there are changes underway in the patent office in interference proceedings and that that particular case applies to that particular set of facts only. To summarize, SPEC had an opportunity in the first interference, had an opportunity in the second interference, and voluntarily relinquished its first interference. Didn't make it showing in the second interference. This is precisely the case where interference estoppel is made for. There's just no additional issue in the second interference that couldn't have been dealt with or wasn't dealt with in the first one. And there's no reason to disturb the finality of that judgment. Thank you. Thank you, counsel. Your honors, both Bates and the board actually rely a significant extent on claim 23. And I think this is an important point to touch on. The fact that claim 23 was in Bates' sets of claims doesn't really mean anything to SPEC at this point. The judgment was about the lost count. Who invented that first? What a corresponding claim is is what claims of a party it will lose in the event it loses the count. At the beginning of the case, claim 23 was properly in because the original formulation of that interference count included the contrast agent embodiment, just like is recited in claim 23. As the interference progressed and was narrowed so that the count no longer had the contrast agent embodiment and SPEC was told, you're not going to be pursuing a count for that embodiment in this interference. At that point, SPEC is the losing party. It makes no sense for SPEC to go challenge the designation of Bates' 23 to account that Bates is winning. It would be completely advisory and completely unripe for SPEC to actually even make an issue out of that. So the fact that claim 23 was tacked on to the lost count at the end of the interference is of no moment if it's at a time where SPEC is the losing party. Corresponding counts only matter to the claim owner or the person who has that claim that is losing. SPEC was out of the case. It didn't have a claim 23, so that's of no moment. The point on FRLET, actually, with that notation of footnote 5, what the board was referring to or this court was referring to, the CCPA, was the creation of what was called sort of the phantom count or generic counts at the time. And there's a very important distinction between how FRLET operated at the time and Biogen. In the Biogen case, FEARS, the losing interference in that situation, got authorization for a motion to add a second count. That motion was litigated and heard by the board in the first interference, and FEARS was bound by that outcome. FEARS got a chance to file a motion with evidence, with all that other good stuff that you get to do under the current board rules. So in Biogen, FEARS loses in the second case not just because of patentable indistinction, but it got a full and fair opportunity to litigate the issue. And he's correct about FRLET, because back in those earlier days, you didn't really have those debates before the board. How the interference was framed was largely delegated down to the examiner, and they weren't appealable issues. So you could request an additional count, and if you didn't get it, you were said to have made a motion and preserved the issue. This situation is much more like FRLET, because we're talking about what is essentially discretionary case management issues. We asked for authorization to even have a motion about this, not didn't file a motion, just said, can we even entertain the notion of this being added, this second count? And the answer was no, and it was treated just like every other unripe issue had been in the interference to that point. That is much more like FRLET, where an examiner says, I'm not going to put that claim in the case and send it up to the board that way. So the notion, if you do read both cases, they actually do talk about motions, but what's included in a motion in modern day practice is much different. Full of evidence, the entire record, Biogen got that chance. My client never got that chance. So fundamentally, what we could have here is a really bad situation in the sense that one of two things should have happened in the first interference. We should have had a broader count that included a chance to, either embodiment could have won the case, right? And we would say they're patently indistinct, but who invented either one should win first priority. Either one should be the first inventor. What we ended up with was a count that only allowed one version of this invention, if you want to treat them as patently indistinct to go forward, and the second version was precluded. And my client needs that opportunity and deserves that opportunity because they didn't get that the first time around. And that should not happen as a result of what appears to be a case management decision rather than a merits decision or some decision that indicates procedural deficiency, if you read that order. Those requests came on the same day, and in no way can spec we faulted for taking adverse judgment. They had just got off the phone with a judge and received an order saying, I'm going to let you go with this count, which you concede you're going to lose, and I'm not permitting this to go forward, and told them to take adverse judgment. That is basically following the judge's orders, and I think that's the right thing to do, and that's not any fault of theirs, and they had done everything they could in that case to preserve their right for a future date, and all we're asking for is the right to have that future date and just put on a priority case before the board. Nothing else needs to be done, and that's all we're asking for. So if there are no other questions, I rest my case. Thank you. Madam, we'll stand some minutes.